IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KATIE A. GIBSON, | Case No. 3:22-cv-454-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMUNITY DEVELOPMENT PARTNERS, *et al.*, | |
| Defendants. | |

Katie A. Gibson, Plaintiff, *pro se*.

Kenneth J. Abere, Jr., and Brandon L. Thornburg, COSGRAVE VERGEER KESTLER LLP, 900 SW Fifth Avenue, 24th Floor, Portland, OR, 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Katie A. Gibson, representing herself, alleges that she has endured unsuitable living conditions and threats amounting to harassment and discrimination during her tenancy at the Milepost 5 Studios apartment complex in Portland, Oregon. Plaintiff brings federal claims under the Fair Housing Act, as amended by the Fair Housing Act Amendments Act of 1988

(FHA);[1] the Americans with Disabilities Act (ADA);[2] and the Rehabilitation Act of 1973

(Rehabilitation Act).[3] In these federal claims, Plaintiff alleges discrimination and failure to make

reasonable accommodations. She also asserts state law claims under the Oregon Fair Housing

Act (OFHA);[4] Oregon Residential Landlord-Tenant Act;[5] Oregon Constitution, art. I, §§ 8, 10;

Oregon Equality Act;[6] and common law doctrines of negligence and intentional infliction of

emotional distress. Plaintiff sues Community Development Partners (CDP), the owners and

operators of the apartment complex; Guardian Management, LLC, the property management

company contracted by CDP; and officers, agents, and employees of these companies, including

Erik Paine, Kyle Paine, Kelly Paine, Kayla F. Jamieson, and Tei-Onna Haggard (collectively,

Defendants).

Defendants move to dismiss Plaintiff's federal claims and her OFHA claim for failure to

state a claim. If this motion is granted, Defendants ask the Court to decline to exercise

supplemental jurisdiction over Plaintiff's remaining state law claims. Defendants also request

that the Court strike certain sections from the Second Amended Complaint. For the reasons

below, the Court grants the motion to strike in part, grants Defendants' motion to dismiss the

---

[1] 42 U.S.C. §§ 3601, *et seq.*

[2] 42 U.S.C. §§ 12101, *et seq.*

[3] 29 U.S.C. §§ 794, *et seq.*

[4] Or. Rev. Stat. §§ 659A.145, *et seq.*

[5] Or. Rev. Stat. §§ 90.100, *et seq.*

[6] The Oregon Equality Act of 2007, SB 2, added protection for "sexual orientation," which included gender identity, to other existing civil rights laws in Oregon protecting persons from discrimination in public accommodations, housing, employment, foster parenting, and public schools. In 2021, HB 3041 expanded the Equality Act and separated "gender identity" from the definition of sexual orientation to its own protected status within the same statutes.

claims under federal law and OFHA, and declines to exercise supplemental jurisdiction over

Plaintiff's remaining state law claims.

## STANDARDS

### A.  Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, courts must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint

"may not simply recite the elements of a cause of action, but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Courts must draw all reasonable

inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*,

513 F.3d 1038, 1043 n.2 (9th Cir. 2008). But courts need not credit a plaintiff's legal conclusions

that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an

entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted).

**B.  *Pro Se* Litigants**

Self-represented, or *pro se*, plaintiffs receive special dispensation. A court must liberally

construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable

doubt. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (quoting *Hebbe v. Pliler*, 627

F.3d 338, 342 (9th Cir. 2010)). Further, "a *pro se* complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." *Florer v.*

*Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks

omitted). A liberal construction of a *pro se* complaint, however, does not mean that the court will

supply essential elements of a claim that are missing from the complaint. *See Litmon v.*

*Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014). Nor does it immunize a *pro se* litigant from

complying with Rule 8(a)(2) of the Federal Rules of Civil Procedure, which "does not require

'detailed factual allegations,'" but does demand more than "'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).

Upon dismissal, a court generally should grant *pro se* litigants leave to amend their

complaints. "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se*

litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to

dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016)

(quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

### C.  Jurisdiction over State Law Claims

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Unlike state courts, which are courts of general jurisdiction, federal courts may only exercise jurisdiction in certain cases as authorized by the United States Constitution and Congress. *See id.*; *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (en banc)*.* Federal courts have jurisdiction over two primary categories of cases: (1) "federal question" cases; and (2) "diversity of citizenship" cases. A "federal question" case involves the Constitution or a federal law or treaty. *See* 28 U.S.C. § 1331. A "diversity of citizenship" case involves citizens of different states where the amount of damages is more than $75,000. *See* 28 U.S.C. § 1332(a)(1). When a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, it must dismiss the complaint, whether upon the motion of a party or sua sponte. *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *see also* Fed. R. Civ. P. 12(h)(3).

A federal court may invoke supplemental jurisdiction over state law claims brought in the same case if the state law claims derive from a common nucleus of operative fact. *See* 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966). When a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction over related state law claims. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Even so, a court may dismiss remaining state law claims, as the "decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

**BACKGROUND**

Plaintiff is a transgender woman who has lived at Milepost 5 Studios since May 1, 2021.
Second Am. Compl. ¶¶ 5-6, ECF 21. She has been diagnosed with gender dysphoria, for which
she receives clinical treatment. *Id.* ¶ 5. Her dysphoria causes her significant stress and anxiety
that impacts her daily life. *Id.* ¶¶ 42, 44. Plaintiff alleges that she has been assaulted, menaced,
and harassed by other tenants on account of her gender identity. These incidents include a knife-
carrying tenant threatening to kill her "numerous times." *Id.* ¶ 19. In another incident, a group of
tenants allegedly surrounded her and taunted her to "come out of the car and show them 'what
kind of woman she really is,'" leading her to spend a fearful night in her friend's car. *Id.*

Plaintiff also alleges that conditions in her apartment complex have been uninhabitable.
She alleges multiple incidents of rampant drug use and sale, prostitution, methamphetamine
production, squatters inhabiting the premises, a stolen car and bicycle "chop shop" operation,
tenants' belongings and trash creating obstructions in common areas, filthy and dangerous
conditions in shared bathrooms, discarded syringes left in common spaces, package theft, bed
bugs, and open firearm displays, among others. *Id.* ¶¶ 18, 21. Plaintiff filed exhibits to support
the allegations in her complaint, providing further examples of the conditions in her residence.
*See* ECF 10, 11.[7] Plaintiff alleges she has delivered to Defendants "countless verbal, written, and
text message complaints" of these conditions and the harassment she has experienced, which

---

[7] Plaintiff separately filed her exhibits on April 22 and 27, 2022. She titled her
submissions "Introduction of Evidence into the Record" and she stated that the exhibits "are
relevant to the claims of uninhabitable conditions as set forth" in her Amended Complaint, which
was filed on April 4, 2022. Although Plaintiff later filed her Second Amended Complaint, the
Court construes that her exhibits are also applicable to, and incorporated into, her claims in the
Second Amended Complaint, which continues to allege uninhabitable conditions. Plaintiff
attached additional exhibits to her response to Defendants' motion to dismiss, but the Court does
not consider those exhibits because they are outside the record on a motion to dismiss.

Defendants have ignored. Second Am. Compl. ¶¶ 20, 22, 54. She also alleges that Defendants

have failed to follow their own policies, including screening prospective tenants and enforcing

the property's no smoking policy. *Id.* ¶¶ 21, 29. As a result of Defendants' failures to act,

Plaintiff alleges that she has suffered financial and mental hardship, fear, humiliation, anxiety,

and stress. *Id.* ¶¶ 31-32, 39, 66-67.

Plaintiff filed her original complaint against Defendants on March 23, 2022. The Court

granted Plaintiff leave to proceed *in forma pauperis* on March 31, 2022. Plaintiff filed her first

amended complaint on April 4, 2022. She moved for appointment of pro bono counsel on

June 27, 2022, which the Court denied because Plaintiff appears able to articulate her claims.

Defendants filed the pending motion to dismiss on July 6, 2022, before the Court or Defendants

had received Plaintiff's Second Amended Complaint, dated July 5, 2022. Plaintiff's response and

Defendants' reply relate only to the Second Amended Complaint. The Court construes

Defendants' motion as applicable to the Second Amended Complaint.

## DISCUSSION

### A.  Motion to Dismiss Federal Law Claims

#### 1.  Fair Housing Act and Oregon Fair Housing Act

Defendants ask the Court to dismiss Plaintiff's first and fourth claims for failure to state a

claim. Plaintiff brings her first claim of discrimination under the FHA and her fourth claim under

OFHA. OFHA mirrors the FHA and is interpreted the same way. *Wilson v. Guardian Mgmt.,*

*LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. April 22, 2019). The Court's resolution on Plaintiff's

FHA claim therefore also will direct the outcome of her state law housing discrimination claim.

The Ninth Circuit has instructed that the "threshold for pleading discrimination claims

under the [FHA] is low." *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2009). For

claims alleging violations of the FHA, there is a "powerful presumption against rejecting

pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th

Cir. 1997) (cleaned up). The Supreme Court has recognized the FHA's "broad and inclusive

compass" and has instructed courts to accord a "generous construction to the Act's complaint-

filing provision." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995).

Plaintiff's first claim for relief alleges discrimination based on her transgender identity or

"sex-gender orientation." The FHA prohibits discrimination against any person "in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities

in connection therewith, because of race, color, religion, sex, familial status, or national origin."

42 U.S.C. § 3604(b). Oregon state law prohibits discrimination based on sex and sexual

orientation in the provision of rental housing. Or. Rev. Stat. § 659A.421(2). Although Plaintiff's

fourth claim for relief does not mention sex discrimination, the Court liberally interprets the

pleading of a *pro se* plaintiff. *Boquist*, 32 F.4th at 774. Based on the context of Plaintiff's

discussion in the Second Amended Complaint, the Court will also consider a claim of sex or

sexual orientation discrimination under Oregon law.

Plaintiff's first and fourth claims for relief also allege discrimination based on disability.

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of service or facilities in connection

with such dwelling because of a handicap." 42 U.S.C. § 3604(f)(2). Oregon law uses the term

"disability" instead of "handicap." Or. Rev. Stat. § 659A.145. Under the FHA, discrimination

includes "a refusal to make reasonable accommodations in rules, policies, practices, or services,

when such accommodations may be necessary to afford such person equal opportunity to enjoy

the dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHA also forbids interference with a person's

enjoyment of any right granted or protected by § 3604. 42 U.S.C. § 3617. This section prohibits

discriminatory harassment that unreasonably interferes with the use and enjoyment of a home, or

"by another name, a hostile housing environment." *Wetzel v. Glen St. Andrew Living Cmty.,*

*LLC*, 901 F.3d 856, 861 (7th Cir. 2018).

To establish an FHA discrimination claim, a plaintiff can rely on three theories:

(1) disparate treatment, (2) disparate impact, or (3) failure to make reasonable accommodations

for handicapped housing. *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997);

*Ariz. Recovery Hous. Ass'n v. Ariz. Dep't Health Servs.*, 462 F. Supp. 3d 990, 1001 (D. Ariz.

2020). Plaintiff argues that she sufficiently pleads discrimination under the standards for both

disparate treatment and disparate impact. Plaintiff also alleges failure to make a reasonable

accommodation. The Court will consider each in turn.

### a.  Disparate Treatment

The FHA "prohibits intentional discrimination—that is, disparate treatment." *Ave. 6E*

*Invs., LLC v. City of Yuma*, 818 F.3d 493, 502 (9th Cir. 2016). The FHA does so by making it

unlawful to discriminate in the sale or rental of housing "*because of* race, color, religion, sex,

familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added). As the Supreme Court

explained in the equivalent employment context,[8] disparate treatment "is the most easily

understood type of discrimination. The employer simply treats some people less favorably than

others because of their [protected characteristic]." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52

(2003) (cleaned up). Discriminatory intent or motive is a necessary element of any disparate

treatment claim under the FHA. *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water*

*Improvement Dist.*, 17 F.4th 950, 972 (9th Cir. 2021) ("[A]llegations that discrimination was a

---

[8] The Ninth Circuit applies Title VII employment discrimination analysis in evaluating
FHA claims. *See Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

motivating factor behind a defendant's actions are essential to plead a disparate-treatment claim."). "[D]iscriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 860 (9th Cir. 2002) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)). Thus, a discriminatory pattern can be probative of motive. *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1060 (C.D. Cal. 2014) (finding allegations of targeted practices and discriminatory patterns based on race or national origin were sufficient to survive a motion to dismiss).

Defendants argue that Plaintiff makes no link between her allegations of uninhabitable conditions and discriminatory treatment in her claim for FHA and OFHA relief. The Court agrees. Assuming for now that Plaintiff is a member of at least one class protected by the FHA, Plaintiff does not allege different treatment *because of* her protected class, nor does she allege any discriminatory intent or motive underlying her alleged treatment. Instead, her complaint and exhibits demonstrate a pattern of Defendants' neglect affecting all tenants who use the community spaces. *See, e.g.*, Ex. A 1-16, ECF 11. Plaintiff alleges that *other tenants* discriminated against her, discussed further below, but does not allege that Defendants themselves created uninhabitable living conditions unique to Plaintiff based on her protected status. Without some connection between Defendants' conduct and Plaintiff's protected class, there can be no intent to discriminate against Plaintiff or discrimination because of her protected status. In addition, Plaintiff is incorrect that Defendants must show that they treated all tenants equally. When first pleading a disparate treatment claim, the burden is on Plaintiff to allege that Defendants had some discriminatory intent underlying their actions. Because Plaintiff has not

alleged that she was treated differently from other tenants at all, let alone because of a protected status, Plaintiff's complaint fails to state a claim for discrimination.

Plaintiff argues in her response that Defendants' failure to intervene in Plaintiff's complaints of sex-or gender-based harassment implicitly ratified the other tenants' discriminatory conduct and constitutes discrimination by Defendants. A failure to act may constitute discrimination. Plaintiff, however, did not specifically allege this in her Second Amended Complaint, although she did allege that Defendants violated the FHA by "refusing to respond to and abate the unsafe and felonious conduct of other tenants" and violated OFHA by "assisting, inducing, inciting, coercing, [] others, encouraging others by failing to act." *See* Second Am. Compl. ¶¶ 29, 48. Plaintiff's complaint and exhibits suggest that Plaintiff repeatedly reported one instance of harassment from another tenant who targeted Plaintiff's transgender status, to which Defendants failed to respond. *See id.* ¶¶ 19-20; Ex. A, ECF 10.

The Ninth Circuit has not considered whether a landlord can be liable under the FHA for failing to address tenant-on-tenant harassment based on a plaintiff's protected class. Defendants point to cases from the Second and Seventh Circuits to argue that failing to stop such harassment only constitutes disparate treatment when the landlord's *failure to stop the harassment* is based on the protected status. *See Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 378 (2d Cir. 2019); *Wetzel*, 901 F.3d at 859. This test logically aligns with the "because of" requirement in the FHA's description of disparate treatment. *See* 42 U.S.C. § 3604(b). Only if a landlord has addressed similar harassment unrelated to protected status in the past but fails to address a plaintiff's protected-status-based harassment, can there be an inference of discriminatory intent. Otherwise, a court cannot assume that a landlord's blanket failure to respond to complaints constitutes discrimination. Plaintiff does not allege any connection between Defendants' failure

to intervene in the harassment she experienced and her protected class. Indeed, she alleges

Defendants failed to intervene in all kinds of complaints based on all different types of conduct.

As a result, Plaintiff fails sufficiently to allege discrimination under disparate treatment.

### b. Disparate Impact

Courts also recognize disparate impact claims under the FHA. *Texas Dep't of Hous. &*

*Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015). A plaintiff bringing a

disparate impact claim challenges practices that have a "disproportionately adverse effect on

minorities" and are otherwise unjustified by a legitimate rationale. *Id.* at 524-25 (quoting *Ricci v.*

*DeStefano*, 557 U.S. 557, 577 (2009)). No discriminatory intent is required. *Sw. Fair Hous.*

*Council*, 17 F.4th at 972.

To state a claim for disparate impact under the FHA, a plaintiff must allege: "(1) the

occurrence of certain outwardly neutral practices, and (2) a significantly adverse or

disproportionate impact on persons of a particular type produced by the defendant's facially

neutral acts or practices." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583

F.3d 690, 711 (9th Cir. 2009) (cleaned up). A plaintiff must "allege facts at the pleading

stage . . . demonstrating a causal connection." *See Inclusive Cmtys. Project*, 576 U.S. at 543.

Defendants' failure to respond to complaints of harassment or unsafe living conditions

might constitute a neutral policy that has a significantly adverse or disproportionate impact on

persons who share Plaintiff's protected characteristics, regardless of Defendants' intent. But

Plaintiff does not allege this in her Second Amended Complaint, nor assert any facts that would

permit the Court to draw such an inference. *Cf. Marquard v. New Penn Fin., LLC*, 2017

WL 4227685, at *12 (D. Or. Sept. 22, 2017) (finding that the plaintiffs plausibly alleged that the

defendants' policy had a discriminatory impact because many of those allegedly affected

belonged to a protected class). Despite the Ninth Circuit's low threshold for pleading

discrimination claims under *McGary*, 386 F.3d at 1262, Plaintiff fails to allege facts sufficient to

state a claim that Defendants' policies or practices have a disproportionate impact on people with

disabilities or transgender status.

### c.   Reasonable Accommodation

Plaintiff also alleges that Defendants failed to provide Plaintiff with a reasonable

accommodation. Unlawful discrimination under the FHA includes a refusal to make a reasonable

accommodation. 42 U.S.C. § 3604(f)(3)(B). The Ninth Circuit has explained:

> In order to state a discrimination claim under the FHAA for failure
> to reasonably accommodate, [a plaintiff] must allege that (1) "[he
> or she] suffers from a handicap as defined by the FHAA"; (2) the
> [defendant] "knew or reasonably should have known of" [the]
> handicap; (3) "accommodation of the handicap 'may be necessary'
> to afford [the plaintiff] an equal opportunity to use and enjoy [his
> or her] dwelling"; and (4) the [defendant] "refused to make such
> accommodation."

*McGary*, 386 F.3d at 1262 (quoting *Giebeler v. M & B Assocs.*, 343 F.3d 1143 (9th Cir. 2003)).

In her claim, Plaintiff contends that Defendants' failure to address "unsafe, unclean, and

dangerous" housing conditions created "habitability" issues that affected her peaceful enjoyment

of her dwelling. Second Am. Compl. ¶ 21, 29. She states that Defendants have not engaged in an

"interactive process" with her "regarding her multiple complaints and reasonable

accommodation[s]," that Defendants failed to "make reasonable accommodations in their rules,

practices, policies, or services to afford [her] an equal opportunity to use and [enjoy]" her unit

and the common areas, and that she has received "threats of eviction for making complaints of

conditions and reasonable accommodation requests." *Id.*

Although Plaintiff recites the elements of claim alleging refusal to make reasonable

accommodations, she does not allege facts to support these statements as required to survive

dismissal. This is insufficient to state a claim. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th

Cir. 2011). Plaintiff does allege that she has gender dysphoria, which would satisfy the first factor of her reasonable accommodation claim because the FHA's definition of "handicap" includes "mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h). But Plaintiff makes no connection between her alleged impairment and any accommodation that may be necessary for her to inhabit Defendants' housing unit. It is unclear what specific accommodation she sought, how such accommodation may have been necessary to address her disability or "handicap," and how it would make her housing situation equal to the opportunities afforded non-disabled persons. Therefore, even if the Court assumes that Plaintiff has a qualifying disability that Defendants knew about (factors one and two), it is impossible to assess whether the unspecified accommodation was necessary or whether Defendants failed to implement it (factors three and four).

In conclusion, the Court grants Defendants' motion to dismiss Plaintiff's first and fourth claims under the FHA and OFHA. Assuming without deciding that Plaintiff's status as a transgender woman with a disability of gender dysphoria might constitute sex and disability discrimination under the FHA, she has not sufficiently alleged disparate treatment because she has not alleged that she was discriminated against *because of* these characteristics. She also fails to allege disparate impact on any protected group of which she is a member. And she has not alleged enough facts from which the Court can ascertain discrimination by refusal to make a reasonable accommodation. Even when accepting as true all well-pleaded facts and drawing all reasonable inferences in her favor, Plaintiff's allegations do not support discrimination claims under the FHA or OFHA.

###     2.    Rehabilitation Act of 1973 and Americans with Disabilities Act

Defendants move to dismiss Plaintiff's second and third claims for relief, which allege violations of the Rehabilitation Act and the ADA. Defendants argue that gender dysphoria does

not constitute a disability under these Acts. They also argue that Plaintiff has not alleged facts

sufficient to show that she was excluded from or denied benefits of a program or activity under

the Rehabilitation Act, nor denied a request for a reasonable accommodation under the ADA. In

the alternative, Defendants ask the Court to dismiss the Rehabilitation Act claim against

individual Defendants and to dismiss the ADA claim to the extent that it seeks money damages,

arguing these claims are impermissible under the applicable statutes.

       a.   **Failure to State a Claim**

In their motion to dismiss for failure to state a claim, Defendants first argue that Plaintiff

is not a qualified individual. Defendants are correct that both the Rehabilitation Act and the ADA

explicitly exclude "gender identity disorders not resulting from physical impairments" from their

definitions of disability. 29 U.S.C. § 705(20)(F)(i); 42 U.S.C. § 12211(b). But Plaintiff does not

claim to have a "gender identity disorder." She alleges gender dysphoria. Gender dysphoria is a

diagnosis introduced in the latest edition of the American Psychiatric Association's classification

of mental disorders. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental*

*Disorders, Text Revision* (DSM-V-TR) F64.0 (5th ed. 2022). It replaces the "now-obsolete" term

"gender identity disorder" used in the previous edition. *Edmo v. Corizon, Inc.*, 949 F.3d 489, 491

n.2 (9th Cir. 2020). Courts across the country disagree over whether gender dysphoria falls into

the ADA's or Rehabilitation Act's categorical exclusions. *See Doe v. Pennsylvania Dep't of*

*Corr.*, 2021 WL 1583556, at \*8 (W.D. Pa. Feb. 19, 2021) (describing three distinct approaches

in case law). The Ninth Circuit has not addressed these categorical exclusions. The Fourth

Circuit, however, recently held that as a matter of statutory construction, gender dysphoria is not

a gender identity disorder, and so nothing in the ADA compels the conclusion that gender

dysphoria is excluded from ADA protection. *Williams v. Kincaid*, 45 F.4th 759, 769 (4th

Cir. 2022).

The Court need not determine whether gender dysphoria constitutes a disability under the ADA or Rehabilitation Act to decide Defendants' motion. Assuming without deciding that gender dysphoria is a disability, Plaintiff's ADA claim fails for the same reason the FHA claim fails. Plaintiff does not allege a failure to provide reasonable accommodations. *See supra* Part A(1)(c). The FHA and ADA share the same requirements for a reasonable accommodation because "there is no significant difference in the analysis or rights and obligations" created under these Acts. *Giebeler*, 343 F.3d at 1149 (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002)); *see also Green v. Mercy Hous., Inc.*, 851 F. App'x 16, 18 n.1 (9th Cir. 2021). As discussed in the context of the FHA, Plaintiff fails to allege what accommodation was denied and why it might have been necessary for her disability. Plaintiff's request for relief under the ADA thus fails to state a claim.

Similarly, even assuming that gender dysphoria is a disability under the Rehabilitation Act, Plaintiff does not state a claim upon which relief can be granted. The Rehabilitation Act aims to ensure that individuals with disabilities receive "evenhanded treatment" in federally funded programs or activities. *Traynor v. Turnage,* 485 U.S. 535, 548 (1988). It prohibits excluding or denying individuals an equal opportunity to receive program benefits and services "solely by reason of" their disability. 29 U.S.C. § 794. Applied here, Plaintiff must allege that Defendants limited her access to their housing program *because of* her gender dysphoria. She does not do so. Plaintiff alleges that Defendants have "engaged in multiple acts subjecting Plaintiff to discrimination" and "obstructed and denied Plaintiff safe use and the benefits of her tenancy at the subject property." Second Am. Compl. ¶ 37. Yet the facts alleged are insufficient to suggest any relationship between Defendant's actions and Plaintiff's gender dysphoria. Nothing suggests that Defendants denied housing services *because of* Plaintiff's disability.

The facts alleged in Plaintiff's Second Amended Complaint and incorporated exhibits, taken as true, fail to show that Plaintiff is entitled to a remedy under the ADA and Rehabilitation Act. The Court thus grants Defendant's motion to dismiss both claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### b.  Statutory Limitations for Individual Suits and Money Damages

Defendants also ask the Court to dismiss the Rehabilitation Act claim against individual Defendants, including Erik Paine, Kyle Paine, Kelly Paine, Kayla F. Jamieson, and Tei-Onna Haggard. Defendants additionally request that the Court dismiss Plaintiff's ADA claim to the extent that it seeks money damages. They argue that these claims are impermissible under the statutes. The Court considers these arguments in case Plaintiff chooses to amend her complaint.

The Rehabilitation Act does not provide an avenue for actions against individuals. Although the Ninth Circuit has not commented on this issue, "courts in other circuits and courts in this district have concluded that claims under the Rehabilitation Act may not be brought against real-person defendants in their individual capacity[,]" in part because *individuals* do not receive financial assistance to fund applicable programs or activities. *Ramirez v. Parker*, 2014 WL 7187463, at *13 (D. Or. Dec. 16, 2014) (cleaned up). Similarly, Title III of the ADA does not provide a private right of action for money damages. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Plaintiff concedes that she may not pursue her Rehabilitation Act claim against the individual defendants and she is not entitled to compensatory damages under Title III of the ADA. The Court thus grants Defendants' motion to dismiss the Rehabilitation Act claim against individual Defendants and the ADA claim for money damages with prejudice. In the event Plaintiff files a Third Amended Complaint, she may not replead these claims.

**B. Motion to Dismiss Remaining State Law Claims**

After moving to dismiss Plaintiff's federal law claims on the merits, Defendants ask the

Court to dismiss Plaintiff's fifth, sixth, seventh, and eighth claims under state law by declining

supplemental jurisdiction.[9] These claims allege violations of the Oregon Residential Landlord-

Tenant Act (ORS § 90.100 *et seq.*), the Oregon State Constitution, the Oregon Equality Act,[10]

common-law negligence, and intentional infliction of emotional distress (IIED). The Court will

consider all remaining state law claims together in deciding whether to retain supplemental

jurisdiction.

After dismissing all claims over which they have original jurisdiction, courts have

discretion to retain jurisdiction over remaining state law claims, but they do not have to do so.

*See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "[I]n the usual case in

which all federal-law claims are eliminated before trial, the balance of factors . . . judicial

economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction

over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

(1988). Further, "these factors usually will favor a decision to relinquish jurisdiction when 'state

issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or

of the comprehensiveness of the remedy sought.'" *Id.* (quoting *Gibbs*, 383 U.S. at 726).

---

[9] Defendants include Plaintiff's fourth claim for relief under OFHA in this request, but because the Court has already dismissed Plaintiff's OFHA claim for failure to state a claim, Defendants' request that the Court decline supplemental jurisdiction over this claim is moot.

[10] In her Second Amended Complaint, Plaintiff changed her sixth claim for relief to one asserting relief under the Oregon Constitution and Oregon Equality Act. Defendants thus added their challenge to this claim after their original motion was filed. The Court accepts this alteration because the Court accepts the parties' change to Defendants' motion as being against Plaintiffs' Second Amended Complaint instead of her first amended complaint.

Among the factors to consider, a district court "may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). That is the situation with Plaintiff's eighth claim. As both Plaintiff and Defendants acknowledge, Oregon courts provide no guidance on how to resolve the question of whether a defendant can be held liable for IIED based on a failure to act. Allowing state courts to resolve claims solely of state law best serves "principles of comity" through which federal courts respect the laws and judicial decisions of state jurisdictions. *See Danner v. Himmelfarb*, 858 F.2d 515, 524 (9th Cir. 1988). The Court declines to take on the task of crafting novel Oregon law, and therefore declines supplemental jurisdiction over Plaintiff's eighth claim.

The factors highlighted by the Supreme Court in *Gibbs* support declining supplemental jurisdiction over the remaining state claims, because state issues substantially predominate in proof, the scope of issues raised, and in the remedy sought. Additionally, because the IIED claim is already directed toward state court, the Court declines to extend jurisdiction over the remaining state law claims. Although the Court recognizes that dismissing Plaintiff's remaining claims may lead to some delay and potential hardship, delay does not necessarily implicate fairness. *See Danner*, 858 F.2d at 524 (having to bring parallel suits "is not an injustice"). State court is the more appropriate forum for Plaintiff to present her claims for relief under state law. The Court thereby grants Defendants' motion to dismiss Plaintiff's state law claims.

## C.  Motion to Strike

The Court finds that Plaintiff's Second Amended Complaint, as currently pleaded, fails to state a claim. It is not "absolutely clear," however, that the deficiencies could not be cured by further amendment. *See Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016). Plaintiff may further amend her complaint if she believes that she can state a claim under federal law, and then continue to assert state law claims under supplemental jurisdiction.

In case Plaintiff chooses to amend her complaint, the Court considers Defendants' motion to strike. Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading any impertinent matter. Fed. R. Civ. Pro. 12(f). A matter is "impertinent" if it consists of statements that do not pertain and are not necessary to the issues in question. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Only one paragraph remains in the Second Amended Complaint of the items Defendants originally moved to strike: paragraph 16, which refers to advertising. Defendants assert that the allegations in this paragraph are impertinent because they bear no relationship to Plaintiff's substantive claims and are not necessary to the issues in the case. Plaintiff has agreed to strike this paragraph. Because this portion of the motion is unopposed, the Court grants Defendants' motion to strike paragraph 16. The rest of the Motion to Strike is denied as moot.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss, ECF 40. The Court dismisses Plaintiff's claims under federal law and OFHA for failure to state a claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Court GRANTS IN PART Defendants' unopposed Motion to Strike, ECF 18. The Court strikes Paragraph 16. The rest of the Motion to Strike is DENIED AS MOOT. If Plaintiff believes she can cure the deficiencies identified in this Opinion and Order, she may file a Third Amended Complaint by November 16, 2022.

**IT IS SO ORDERED**.

DATED this 18th day of October, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge